UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL MAURICE DUKES,<br><br>Plaintiff,<br><br>v.<br><br>TAMMY SOTO and JOHN PEARCE,<br><br>Defendants. | Case No. 1:21-cv-01570-JLT-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 11) |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First Amended Complaint. (Doc. No. 11, "FAC"). For the reasons set forth below, the undersigned recommends that the district court dismiss the First Amended Complaint because it fails to state any cognizable constitutional claim and close this case as any further amendments would be futile.

**SCREENING REQUIREMENT**

Plaintiff commenced this action while in prison and is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen any complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the Court to identify any cognizable claims and

---

[1]This matter was referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(B) and Eastern District of California Local Rule 302 (E.D. Cal. 2022).

dismiss the complaint, or any portion, if is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the Court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

The Federal Rules of Civil Procedure require only that the complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading could be cured by the allegation of other facts, the *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the Court to advise a *pro se* litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at

1131 n.13.

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff, a state prisoner proceeding pro se, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1). The Complaint alleged that Tammy Soto, a Registered Nurse at Corcoran State Prison, and John Pearce, Plaintiff's primary care physician, were deliberately indifferent to his serious medical condition. (*Id*. at 4). After Plaintiff underwent shoulder surgery Plaintiff was released back to Corcoran State Prison, where Defendants Soto and Pearce prescribed Tylenol with Codeine, rather than Oxycodone with acetaminophen as prescribed by Plaintiff's shoulder surgeon. (*Id*. at 4). Plaintiff takes gabapentin and asserts it should not have been mixed with Tylenol with Codeine, which Defendants prescribed for him despite being aware of his use of gabapentin. (*Id*.). Plaintiff suffered side effects including diarrhea, abdominal pains, and weight loss. (*Id*.). Plaintiff's medical records attached reflect, however, that Defendants took several measures to alleviate Plaintiff's symptoms including changing his pain medication and providing him anti-diarrhea medication. (*Id*. at 8, 12). Plaintiff also received extensive post-operative care and physical therapy, and Plaintiff stopped complaining of side effects. (*Id*. at 8-25). The undersigned screened Plaintiff's Complaint and found it failed to state any cognizable claim because the facts at most described a difference of medical opinion, not medical deliberate indifference. (Doc. No. 10 at 6).

On March 20, 2023, Plaintiff filed a First Amended Complaint ("FAC"). The incidents giving rise to the FAC are the same as those giving rise to the initial Complaint, and in fact are almost identical to Plaintiff's initial Complaint. (See Doc. No. 11 at 5-7; Doc. No. 1 at 4-5). The FAC repeats the allegation that Defendants wrongly prescribed him acetaminophen with codeine, despite knowing that he was taking Gabapentin, which should not be mixed. (Doc. No. 11 at 5-7). As a result, Plaintiff suffered side effects including severe diarrhea, inability to hold down food and liquids, severe abdominal pains, and weight loss. (*Id*.). Plaintiff asserts he is "still suffering the lingering effects from the deliberate indifference and cruel and unusual punishment inflicted by and through RN Tammy Soto and Dr. John Pearce." (*Id*. at 7). Plaintiff further

3

1  asserts he "is presently and was then a patient of the mental health program known as the
2  CCCMS program" and states that Defendants' actions exacerbated his mental health problems.
3  (*Id*.).  Plaintiff attaches to the FAC copies of his grievances and the institutional responses, as
4  well as copies of his post-surgery medical records reflecting that he was initially prescribed
5  acetaminophen with Oxycodone, which was later changed to acetaminophen with Codeine, and
6  that Plaintiff was already taking Gabapentin.  (*Id*. at 22-35).  The FAC also attaches "Drug
7  Education Monographs" concerning Acetaminophen-Codeine and Gabapentin.  (*Id*. at 39-45).

8        At this stage of the proceedings, the Court's review is limited to the complaint, exhibits
9  attached, and materials incorporated into the complaint by reference, and matters of which the
10 court may take judicial notice.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir.
11 2014); *see also* Fed. R. Civ. P. 10(c).  Because the exhibits are attached and incorporated in the
12 FAC, the Court may consider the exhibits when their authenticity is not questioned.  *See Lee v.*
13 *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting at 12(b)(6) stage material properly
14 submitted as part of the complaint may be considered without converting the motion to dismiss to
15 a motion for summary judgment).  The Court may disregard allegations contradicted by facts
16 established in exhibits to the Complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988
17 (9th Cir. 2011) (a plaintiff may plead himself out of a claim by including . . . details contrary to his
18 claims); *see also Cooper v. Yates*, 2010 WL 4924748, *3 (E.D. Cal. Nov. 29, 2010) (courts may
19 disregard factual allegations contradicted by facts established by reference to exhibits attached to the
20 complaint).

21       The attached documents confirm that Plaintiff underwent shoulder surgery on March 18,
22 2020. (*Id.* at 11).  According to the California Correctional Health Care Services' response to
23 Plaintiff's initial grievance, Plaintiff tolerated the procedure well and was discharged on that
24 same day back to prison.  (*Id.*).  The same day, the "nursing staff" reviewed the discharge
25 treatment recommendations and the "primary care provider did not find non-formulary use of
26 oxycodone appropriate at that time" and instead prescribed a short-term course of acetaminophen
27 with codeine for post-operative pain management, consistent with the California Correctional
28 Health Care Services ("CCHCS") guidelines.  (*Id.*).

Plaintiff received post-operative follow-up care on March 19, 2020, at which time Plaintiff was encouraged to use pain medication only as needed. (*Id.* at 11, 18). On March 20, 2020, Plaintiff was seen by a Registered Nurse for a dressing change for his surgical wounds and reported symptoms of diarrhea; at that time the nurse prescribed Plaintiff Loperamide, an antidiarrheal. (*Id*. at 18). On March 22, 2020, Plaintiff submitted a medical grievance noting diarrhea, severe pain, and inability to hold down food resulting in dehydration and loss of sleep. (*Id.* at 21). On March 24, 2020, Plaintiff reported to the medical department with diarrhea symptoms and was ordered to discontinue acetaminophen with codeine and to start acetaminophen only; he denied unexplained weight loss or gain at that time. (*Id.* at 18).

Plaintiff continued to receive medical care and received a plan of care that included physical therapy and pain medication. (*Id.* at 11, 19) (noting Plaintiff was provided physical therapy on April 28, 2020, April 30, 2020, May 5, 2020, May 7, 2020, May 12, 2020, May 14, 2020, and May 19, 2020). Medical notes reflect that Plaintiff reported to the medical department and he was encouraged to continue a self-exercise program and gentle stretches, and to report to medical for continued monitoring. (*Id*. at 11). Improvement to Plaintiff's left shoulder was noted and Plaintiff did not have any medical complaints. (*Id.*). Plaintiff is enrolled in a Chronic Care Program. (*Id.*).

As relief for his injuries, Plaintiff requests a declaratory judgment finding Defendants' actions were unconstitutional and monetary damages of $800,000. (*Id.* at 8).

**APPLICABLE LAW AND ANALYSIS**

**A.  Eighth Amendment Medical Deliberate Indifference**

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). On the objective prong, a "serious"

medical need "include[s] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). The subjective prong requires a showing that a prison official knew of and disregarded a serious risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

If an official fails to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. *Estelle*, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment, without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm

from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726 F.3d at 1074.

Following his shoulder surgery on March 18, 2020, Plaintiff experienced a serious medical need, i.e. management of his post-operative pain and rehabilitation of his shoulder. The record reflects that medical staff saw Plaintiff at least 16 times between March 18 and May 26, 2020 to manage his recovery, provide physical therapy, and treat his ongoing symptoms. (Doc. No. 11 at 18-19). Medical staff responded promptly to his grievances. (*Id.*). Plaintiff's medications were adjusted after he reported side effects from his medication, and new medications were prescribed to address his diarrhea. (*Id.*). The records show that his shoulder continued to improve, and Plaintiff ceased to complain of weight loss or diarrhea. (*Id.*).

While Defendants helped provide this care, however, the FAC alleges they were deliberately indifferent to the risk posed by changing Plaintiff's pain medication prescription from oxycodone to acetaminophen-codeine. Plaintiff asserts that "Gabapentin . . . should never be taken with acetaminophen with codeine." (Doc. No. 11 at 6). The symptoms Plaintiff experienced while taking the two medications, severe diarrhea, weight loss, and severe abdominal pain, "significantly affect[ed]" Plaintiff's daily activities and are sufficient to establish a serious medical need, satisfying the first prong of the deliberate medical indifference analysis. *See Colwell*, 763 F.3d at 1066. Again, the record reflects that medical staff promptly responded to this need by prescribing Plaintiff anti-diarrhea medication, adjusting his pain medication, and providing numerous follow-up appointments to check on Plaintiff's progress and help rehabilitate his shoulder. (Doc. No. 11 at 18-19).

The FAC alleges, in effect, that Defendants should have known that such symptoms would result from prescribing Plaintiff acetaminophen-codeine while he was already taking gabapentin. (See Doc. No. 11 at 6-7). The mere fact that a prison official "*should* have been aware" of a risk, but in fact was not, is insufficient to establish a violation of the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). And the FAC is devoid of facts indicating that Defendants Soto and Pearce knew (or

even *should have known*) that Plaintiff would experience severe symptoms from combining gabapentin and acetaminophen-codeine and nevertheless ordered the prescription.

Plaintiff's assertion that "Gabapentin . . . should never be taken with acetaminophen with codeine" is modestly supported by an exchange Plaintiff describes having with an unnamed nurse in his April 17, 2020 health care grievance, attached to the FAC.  (Doc. No. 11 at 19).  Plaintiff describes meeting with the nurse, "Jane Doe" where he reported experiencing diarrhea and Jane Doe "told [Plaintiff his] diarrhea is due to the two medication(s) mixed together . . ." (*Id*.). Assuming the "two medication(s)" being referred to are gabapentin and acetaminophen-codeine, this hearsay account does not establish the nurse's assessment is correct, that such a severe reaction was likely, or that Defendants Soto and Pearce knew of the risk to Plaintiff of taking the two medications together.

Indeed, the drug monographs for acetaminophen-codeine and gabapentin, attached to Plaintiff's FAC, fail to mention any specific risk posed by combining the drugs. The "drug interactions" section of the gabapentin monograph states in relevant part:

> Tell your doctor or pharmacist if you are using other products such as opioid pain or cough relievers (such as codeine, hydrocodone), alcohol, marijuana (cannabis), drugs for sleep or anxiety (such as alprazolam, lorazepam, zolpidem), muscle relaxants (such as carisoprodol, cyclobenzaprine), or antihistamines (such as cetirizine, diphenhydramine) . . . *do not use this medication with other medications that contain gabapentin*.

(*Id*. at 44) (emphasis added).  Notably, the guidance advises a patient using gabapentin to *inform* their physician if they are already using codeine (or other opioids, which Plaintiff was prescribed by Plaintiff's surgeon).  It does not, however, specifically discourage combining gabapentin and codeine or acetaminophen-codeine, state that they should never be mixed, or predict severe symptoms from doing so.  (*Id*. at 43-44).  And while the guidance categorically warns against using gabapentin with other medications containing gabapentin, there is no such categorical warning against using gabapentin with acetaminophen-codeine.  (*Id*.).  As for the monograph on acetaminophen-codeine, it says nothing about gabapentin.  (*Id*. at 39-41).  Thus, the only pertinent medical evidence in the record reflects no well-known risk from combining gabapentin and acetaminophen-codeine.

Even if Defendants were aware that taking gabapentin and acetaminophen-codeine could produce side effects like those Plaintiff experienced, claims arising from side effects of medication only state a claim of negligence, not medical deliberate indifference. *Wynn v. Angelone*, 1994 WL 551434 at *1 (9th Cir. Oct. 6, 1994) (finding that where a doctor prescribed ibuprofen that caused prisoner ill effects, doctor was not deliberately indifferent—most that was shown was negligence or medical malpractice); *Pierce v. Lopez*, 2012 WL 1424485, at *4–5 (E.D. Cal. Apr. 23, 2012) (doctor's failure to recognize side effects from antibiotics was only negligence, not deliberate indifference); *Uhuru v. Greenman*, 2009 U.S. Dist. LEXIS 134432, at *24 (C.D. Cal. Sep. 21, 2009) (finding that defendant doctors were "not liable for the side effects of medications used to control plaintiff's mental health" because plaintiff's injuries due to side effects of his medication stated only a claim of negligence); *Murillo v. Thornton*, 2008 U.S. Dist. LEXIS 1520, at *4, 2008 WL 110899, at *4 (S.D. Cal. Jan. 9, 2008) (prisoner's allegations that defendant "prescribed him the wrong medication and did not inform him about the side effects," causing plaintiff "severe stomach aches and headaches for four months," failed to state an Eighth Amendment claim). Alternatively, Plaintiff describes a difference of medical opinion between Defendants and his surgeon. Thus, at most Plaintiff's FAC may state a claim of negligence, or a difference of medical opinion, neither of which is sufficient to establish deliberate medical indifference. *See Jackson,* 90 F.3d at 332. Accordingly, the undersigned finds the FAC fails to state an Eighth Amendment claim against Defendants Soto and Pearce.

## FINDINGS AND RECOMMENDATION

Plaintiff had an opportunity to cure the deficiencies in his initial Complaint. (*See* Doc. No. 11). In its prior screening order, the Court instructed Plaintiff on the applicable law and pleading requirements. Despite affording Plaintiff an opportunity to correct the deficiencies, the FAC fails to adequately state any plausible § 1983 claim and in fact repeats almost verbatim the allegations made in Plaintiff's initial Complaint. Thus, the undersigned finds it would be futile to permit Plaintiff to file a second amended complaint and recommends the district court dismiss the FAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) *citing Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend

is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").

Accordingly, it is **RECOMMENDED**:

The First Amended Complaint be dismissed under § 1915A for failure to state a claim and the action be dismissed.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  July 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE